## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MARCIE MALAMPHY, and others,
similarly situated,

      Plaintiff,

v.                                 Case No: 8:16-cv-327-T-17TGW

ABUNDANT LIFE HOME HEALTH
AGENCY, LLC and NELY NIDA
VILLAVENCIO, an individual,

      Defendants.

_____

### ORDER

This action to recover damages for violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* (the "**FLSA**") was tried before the Court on July 12, 2017. According to the pretrial order, "the sole factual dispute concerning unpaid overtime compensation [was] the regular rate of pay for opt-in plaintiff Carol Dorry." (Doc. No. 88, at ¶ 3). "[T]he two other issues remaining to be tried in the case [were] the applicable statute of limitations and whether defendants have a good faith defense to liquidated damages under the FLSA." (Doc. No. 88, at ¶ 4). Having considered the parties' positions and the evidence introduced and admitted at trial, the Court makes the following findings of facts and conclusions of law[1] in accordance with Federal Rule of Civil Procedure 52(a)(1):

_____

[1] To the extent any findings of fact may constitute conclusions of law, or vice versa, they are adopted as such.

I.      **Findings of Fact**[2]

A.      **The Parties**

1.      Defendant Abundant Life Home Health Agency, LLC ("**Abundant Life**") is a Florida limited liability company that provides home health care nursing services to patients living in the Tampa Bay area.

2.      Defendant Nely Nida Villavicencio ("**Villavicencio**") is the president of Abundant Life, which she founded in 2007.

3.      Abundant Life currently employs approximately 86 home health care nurses and administrative staff.

4.      The Plaintiffs ("**Plaintiffs**") are all former or current home health care nurses employed by Abundant Life.

B.      **The Formation of Abundant Life and the Department of Labor Audit**

5.      Villavicencio's education and background is in nursing with a particular focus on treating juvenile patients.

6.      Villavicencio does not possess any legal training or expertise, and she did not hire an attorney or business consultant to advise her regarding the legality of her employment and compensation structure when she founded Abundant Life.

7.      Instead, Villavicencio conducted her own independent legal research regarding the requirements of the FLSA and other applicable laws affecting her business.

8.      Villavicencio's efforts in this regard ultimately proved deficient, as the Department of Labor conducted an audit in 2013 that resulted in a determination that

---

[2] Prior to trial, the parties stipulated to various threshold matters in their *Joint Pre-Trial Statement* (Doc. No. 78) (the "**Joint Pre-Trial Statement**"), which are specifically incorporated herein by reference.

Abundant Life had failed to pay overtime in accordance with the FLSA.

9.      As a result of the unfavorable audit, Abundant Life was required to repay $11,788.61 in unpaid overtime compensation to eight employees; however, no liquidated damages were assessed by the Department of Labor.

10.      Following the audit, a representative of the Department of Labor (identified as Inspector Sharon Knighton) attempted to demonstrate how Abundant Life could restructure its employment and compensation structure to comply with the FLSA.

11.      In so doing, Inspector Knighton purportedly represented that Abundant Life could lower employees' hourly rates of pay so long as the "regular rate" was not a "false rate" that changed every week.

**C.      Abundant Life's Revised Employment and Compensation Structure**

12.      Following the conclusion of the Department of Labor audit, Abundant Life determined that it could not afford to pay its employees a combination of regular and overtime pay that exceeded its Medicaid reimbursement rate of $24.45/hour.

13.      Consistent with that determination, Abundant Life assigned its employees new "regular rates" of pay that would not result in the payment of overtime compensation in excess of $24.45/hr.

14.      In practice, however, Abundant Life began paying its employees at different rates of pay depending on whether they worked in excess of 40 hours per week.

15.      For instance, during weeks in which employees would work more than 40 hours per week, their non-overtime "regular rates" of pay would be reduced downwards so that their overtime rates of pay would not exceed $24.45/hr.

16.      Contrastingly, during weeks in which employees did not work more than 40 hours per week, their non-overtime "regular rates" would be adjusted upwards to hourly

rates commensurate with the employees' salary expectations.

17.    Ostensibly, these upward adjustments to employees' non-overtime rates of pay were made pursuant to a discretionary, performance-based bonus system administered by Villavicencio; however, in actuality, Abundant Life had a longstanding policy of paying employees the same hourly rate regardless of whether they worked 40 or more hours per week.

18.    Simply put, during weeks when employees worked overtime, their hourly rates would be adjusted downwards such that they would earn the same hourly rate that they received during non-overtime pay periods.  Conversely, if an employee worked less than 40 hours per week, she would not be paid at the reduced overtime rate, but rather at a higher "regular rate" actually commensurate with her salary expectations.

19.    While Abundant Life and Villavicencio claim they believed the foregoing pay scheme was legal, they took no independent action to confirm whether they were in compliance with the FLSA, such as by hiring outside legal counsel or seeking written or verbal guidance from the Department of Labor.

## II.    Conclusions of Law

20.    This Court has jurisdiction pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1337.

21.    Under Section 207 of the FLSA, "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).  To determine whether an employer violated the FLSA's overtime wage requirement, the Court must calculate the employee's "regular rate" of pay, and determine

whether the employee received one and one-half that "regular rate" for work in excess of forty hours per week. Courts interpret "regular rate" to mean "the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed." *Parth v. Pomona Valley Hosp. Med. Center*, 630 F.3d 794, 799 (9th Cir. 2010).

22. Under the FLSA, parties may generally establish the "regular rate" at any point and in any manner they see fit, so long as the employer otherwise complies with applicable minimum wage requirements. *Id.* However, employers may not decrease employees' hourly rate based on the number of hours worked, set the hourly rate for overtime at a rate lower than the regular rate especially when the overtime work is identical to that performed during regular hours, or set the hourly rate for regular work lower during weeks when overtime is worked. *Id.* at 803-04. Thus, to calculate the true "regular rate" of pay received by an employee, courts must "look beyond that which the parties have purported to do, and find the hourly rate *actually* paid for the normal, non-overtime workweek." *Mata v. Caring for You Home Health, Inc.*, 94 F.Supp.3d 867, 875 (S.D. Tex. 2015) (emphasis in original).

23. Section 216(b) of the FLSA provides that "[a]ny employer who violates the provisions of section . . . 207 of this title shall be liable to the . . . employees affected in the amount of their . . . unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). "The court in such actions shall, in addition to any judgment awarded to the . . . plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

24. Section 260 of the FLSA, however, provides employers who violate the FLSA with a limited defense to claims for liquidated damages. Section 260 states, in

pertinent part, that

> In any action . . . to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the [FLSA], if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of [the FLSA].

29 U.S.C. § 260.   Section 260 of the FLSA has subjective and objective components. *Fuentes v. CAI Intern., Inc.*, 728 F.Supp.2d 1347, 1357 (S.D. Fla. 2010).   "To establish subjective good faith, the burden of proof is on the employer to show that it had an honest intention to ascertain what the [FLSA] requires and to act in accordance with it." *Id.* "Objective good faith means the employer had reasonable grounds for believing its conduct comported with the FLSA." *Friedman v. South Fla. Psychiatric Assocs., Inc.*, 139 F.App'x 183, 185-86 (11th Cir. 2005).

25.   The FLSA also has either a two or three year statute of limitations depending on whether (or not) the defendant willfully violated the FLSA. *See* 29 U.S.C. § 255(a) (stating that an action under Section 207 of the FLSA must be "commenced within two years after the cause of action accrued . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.").   "To establish that the violation of the [FLSA] was willful in order to extend the limitations period, the employee must prove by a preponderance of the evidence that his employer either knew that its conduct was prohibited by the statute or showed reckless disregard about whether it was." *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1162-63 (11th Cir. 2008).   "The Code of Federal Regulations defines reckless disregard as the 'failure to make adequate inquiry into whether conduct is in compliance

with the Act.'" *Id.* at 1163.

III.   **Application of Law to Facts**

   A.   **Calculation of Unpaid Overtime Compensation**

   26.   In its summary judgment order (Doc. No. 74), the Court determined that the

Defendants failed to pay seven of the nine opt-in Plaintiffs overtime based on the following

"regular rates" of pay:

   Diane Lorch – $16.00
   Emma Adkins – $18.00
   Nancy Vincent – $20.00
   Linda Brooks – $20.00
   Carol Ann Dorry – $17.00
   Chrystal Ivey – $16.00
   Charles McFarland – $16.00

(Doc. No. 74, at 5).

   27.   Moreover, at trial the parties stipulated to the following "regular rates" of pay

for the remaining opt-in Plaintiffs:

   Marcie Melamphy – $17.00
   Ragna Esajas – $16.50

(Doc. No. 78, at 17).

   28.   The parties further stipulated that the following opt-in Plaintiffs are owed

unpaid overtime compensation as set forth below:

   Marcie Melamphy - $3,152.05
   Ragna Esajas - $5,285.36
   Diane Lorch - $6,779.28
   Emma Adkins - $1,662.75
   Linda Brooks - $820.00
   Chrystal Ivey - $320.00
   Nancy Vincent - $7,926.70
   Charles McFarland - $3,730.00

(Doc. No. 78, at 17).

   29.   In light of the foregoing, at trial the only area of disagreement regarding the

amount of unpaid overtime compensation related to the "regular rate" of pay for Plaintiff Carol Ann Dorry.[3]  According to the Defendants, Ms. Dorry agreed to a "regular rate" of $15.69/hr pursuant to her "Wage Agreement" with Abundant Life. (Doc. No. 73-9).  Ms. Dorry, on the other hand, contends that her "regular rate" was $17.00, as reflected by the amounts she was paid during the non-overtime pay periods ending October 16, 2015 and November 13, 2015. (Doc. No. 59-6, at 9-10; 13-14).

30.    Upon review, the Court agrees with Ms. Dorry that her "regular rate" of pay was $17.00.  Based upon the evidenced adduced at trial, Ms. Dorry only earned less than $17.00/hour during weeks in which she worked more than 40 hours. *See, e.g.*, (Doc. No. 59-6, at 11-12) (showing that Ms. Dorry earned $15.69/hr for non-overtime hours worked during the pay period ending October 30, 2015, during which she worked a total of 102 hours).  Since an employee cannot bargain away her rights under the FLSA, *see Herman v. City of St. Petersburg, Fla. Police Dept.*, 131 F.Supp.23 1329, 1332 (M.D. Fla. 2001), the Defendants were required to pay Ms. Dorry overtime based on her "regular rate" of $17.00/hr.  Accordingly, Ms. Dorry is owed $2,843.25 in unpaid overtime based upon the undisputed calculation attached as Exhibit "E" to the Joint Pre-Trial Statement.

**B.    Defendants' Good Faith and Statute of Limitations Defenses**

31.    At trial, the parties other areas of contention related to whether (1) the Defendants are entitled to a good faith defense under Section 260 of the FLSA, and (2) the Defendants' actions were willful for purposes of calculating the applicable statute of

---

[3] As noted in the summary judgment order, the Court already determined that Ms. Dorry was not paid overtime at her "regular rate" of $17.00/hr while she worked for the Defendants. (Doc. No. 74, at 5-6).  Nevertheless, out of an abundance of caution, the Court will consider the issue anew for purposes of making its findings of fact and conclusions of law.

limitations under Section 255 of the FLSA.

32.     Upon review, the Court concludes that the Defendants failed to make an objectively adequate inquiry into whether their pay scheme complied with the FLSA.  To the contrary, despite having been audited by the Department of Labor and found to have violated the FLSA, the Defendants did not seek any independent guidance regarding whether their revised pay scheme complied with the FLSA.  Instead, the Defendants simply repeated the same ill-advised behavior that resulted in the unfavorable Department of Labor audit in the first instance, i.e. attempting to ascertain for themselves whether their pay scheme complied with the FLSA.

33.     Moreover, from a subjective standpoint, the Court does not find the Defendants' testimony regarding their interactions with Inspector Knighton to be credible. The Defendants neither subpoenaed Inspector Knighton to appear and testify at trial, nor obtained a declaration, affidavit, or other form of written verification regarding Inspector Knighton's alleged representations.  Thus, the Court affords the Defendants' testimony regarding their subjective good faith intention to comply with the FLSA little weight and, instead, concludes that the Defendants post-audit pay scheme was a continuation of their longstanding policy of "not paying overtime."

34.     Since the Defendants have failed to carry their burden of proof under the subjective and objective components of Section 260 of the FLSA, they are not entitled to a good faith defense in this case.  Moreover, for the same reasons, the Plaintiffs have successfully demonstrated that the three year statute of limitations applies to their claims under Section 255 of the FLSA.

35.     Consistent with the foregoing findings of fact and conclusions of law, and

pursuant to the undisputed calculation of damages attached to the Pre-Trial Statement, the Defendants are liable to the Plaintiffs as follows:

| Plaintiff: | Unpaid Overtime: | Liquidated Damages: | Total: |
|---|---|---|---|
| Marcie Melamphy | $3,152.05 | $3,152.05 | $6,304.10 |
| Ragna Esajas | $5,285.36 | $5,285.36 | $10,570.72 |
| Diane Lorch | $6,779.28 | $6,779.28 | $13,558.56 |
| Carole Ann Dorry | $2,843.25 | $2,843.25 | $5,686.50 |
| Emma Adkins | $1,662.75 | $1,662.75 | $3,325.50 |
| Linda Brooks | $820.00 | $820.00 | $1,640.00 |
| Crystal Ivey | $320.00 | $320.00 | $640.00 |
| Nancy Vincent | $7,926.70 | $7,926.70 | $15,853.40 |
| Charles McFarland | $3,730.00 | $3,730.00 | $7,460.00 |
| **All Plaintiffs** | $32,519.39 | $32,519.39 | $65,038.78 |

## IV.   Conclusion

Accordingly, it is

**ORDERED** that the Plaintiffs are directed to submit a proposed form of final judgment consistent with the terms of this order within 14 days.

It is further **ORDERED** that any motion for attorney's fees and costs shall be filed in accordance with the Federal Rules of Civil Procedure.

It is further **ORDERED** that the Clerk of Court is directed to **CLOSE** this case and **TERMINATE** any pending motions.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida this 2nd day of August, 2017.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

10